RAFKIN ESQ., PLLC
SETH A. RAFKIN (199166)
(srafkin@rafkinesq.com)
JENNIFER M. BOGUE (259431)
(jbogue@rafkinesq.com)
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ  07869
Telephone:	(973) 891-3370
Facsimile:	(973) 920-9727

Attorneys for PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. 20-cv-03989-KAW

KELEE WILLIAMS,

        Plaintiff,

v.

ROBERT HALF INTERNATIONAL INC.,

        Defendant.

**SECOND AMENDED COMPLAINT**
(Jury Trial Demanded)

Plaintiff Kelee Williams, as a complaint against Robert Half International Inc., alleges and states the following:

## NATURE OF THE CASE

1. This is a case about the sustained underpayment of women by one of the world's leading executive recruiting firms, Robert Half International Inc.  It is also a case about the retaliation one woman faced when she had the temerity to call out discriminatory conduct to management at Robert Half.

2. Plaintiff Kelee Williams, one of Robert Half's most consistently successful sales executives, raised the fact that male employees were being verbally abusive to women and that she was being treated unfairly with respect to compensation.  Plaintiff raised these issues on more than one occasion directly to management at Robert Half International.

3. The company should have investigated and remedied the situation. It didn't. Instead, it sought to push Plaintiff out of the company. It took key accounts away from her. It gave men substantial bonuses for their work on key projects, but gave no bonus at all to Plaintiff, even though her efforts were as substantial and effective as her male peers. Plaintiff complained about these issues as well. When she applied for a more senior position, her male boss, who was well aware of her complaints, poisoned the well for her by telling other executives that Plaintiff was not a team player and a disruptive force. The position went to one of his male cronies.

4. Meanwhile, as the company was taking key accounts away from Plaintiff, it told her it was changing her compensation plan. Yet, no compensation plan was provided. Instead, Plaintiff was left to wither on the vine. A clearer case of trying to force an employee to quit is difficult to imagine.

## PARTIES

5. Plaintiff Kelee Williams is a resident of the State of Illinois. She is an experienced sales executive, who for many years has been among the top performers for Defendant Robert Half International Inc.

6. Defendant Robert Half International Inc. ("RHI") is a corporation formed under the laws of the State of Delaware and headquartered in Menlo Park, California, which is its principal place of business in California. RHI is one of the world's leading providers of executive search services and related recruiting services.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction over this action is conferred upon and vested in this Court under 28 U.S.C. § 1331 and 1332.

8. Jurisdiction exists under 28 U.S.C. § 1331 because the claims set forth arise under the federal statutes known as Title VII and the Equal Pay Act.

9. Jurisdiction exists under 28 U.S.C. § 1332 because the requisites for diversity jurisdiction are met.

    a. The parties are citizens of different states. Ms. Williams is and at all times relevant hereto was, a citizen of the State of Illinois. Defendant RHI is a corporation formed under the laws of the State of Delaware and headquartered in Menlo Park, California, which is its principal place of business in California.

    b. The amount in controversy exceeds $75,000 exclusive of fees and costs. Among other things, Ms. Williams seeks damages equal to the amount of underpayment in violation of the Equal Pay Act as well as liquidated damages and damages for emotional distress and humiliation under the Equal Pay Act. She also seeks punitive damages.

10. This Court has personal jurisdiction over RHI. RHI maintains its headquarters in Menlo Park, California, operates several other offices within California and regularly conducts business in the state.

11. Venue is proper in this Court. A substantial part of the events giving rise to the claims occurred in this district, i.e., decisions made by RHI within this district regarding Ms. Williams' employment and compensation are at the heart of her claims for violation of Title VII and the Equal Pay Act.

**FACTUAL ALLEGATIONS**

12. Plaintiff Kelee Williams is an experienced, successful sales executive. She joined RHI in 2013. During her employment at RHI, she has consistently been one of its top performers. She has repeatedly qualified as among the top sales executives year after year. As the allegations set forth below make clear, her performance was achieved in a difficult environment.

3
PLAINTIFF'S SECOND AMENDED COMPLAINT

13. Plaintiff encountered male employees at RHI who frequently were verbally abusive to female employees including Plaintiff. Plaintiff complained to RHI management on more than one occasion about more than one of these men. RHI took no meaningful action.

14. Plaintiff has been routinely excluded from leadership meetings. Yet, male counterparts in similar positions as Plaintiff are included. When Plaintiff complained to RHI management, she was told simply that she does not belong in those meetings.

15. RHI maintained a mentoring program. Although Plaintiff was asked to mentor other employees, no one was ever assigned to mentor her. Yet, men in the same or similar positions were assigned mentors to help them with their career paths at the company. Among other things, RHI would fly men in the same or similar positions to visit other offices to shadow successful counterparts to help better position them for promotions. Plaintiff was never afforded the same opportunity.

16. Plaintiff was pressured by a male regional manager to give up credit, i.e., the basis for compensation, on one of her accounts so the manager could give it to his male direct report. The regional manager did not place the same demands on Plaintiff's male counterparts.

17. RHI paid men in the same position as Plaintiff a higher base salary. RHI also provided men in the same position with a guaranteed minimum compensation for the first year of employment, something not provided to Plaintiff.

18. Men promoted into the same position received a raise in their base salary. When Plaintiff was promoted to the same position, she received no increase in her base salary.

19. In 2018, RHI assigned Plaintiff's market a multi-million dollar goal. Plaintiff worked with two men on a major project for the Stericycle account. The project generated several million dollars in revenue against the goal. The two men Plaintiff worked with on the project were awarded substantial bonuses for their work on the project. Plaintiff received no bonus at all.

20. In 2019, the same story unfolded. The Stericycle account generated 60% of the overall revenue for the region and, indeed, the region was tied with New York as the top producing region for RHI. The men received generous bonuses. Plaintiff, again, received nothing.

21. In March of 2019, RHI told Plaintiff that it was taking certain of her key accounts away from her and assigning them to other team members. In fact, RHI continually moved to reduce Plaintiff's accounts and thus affect her compensation. In the span of nine months, she went from having more than 25 accounts to a mere eight. And, the same male District Manager discussed above endeavored to marginalize Plaintiff's role in two one of those eight accounts. Plaintiff repeatedly raised the issue of the steady diminution of her account base and thus compensation with RHI management. Again, RHI did nothing.

22. Throughout 2019, as RHI was stripping away accounts from her, it repeatedly told Plaintiff that it would revise her compensation plan to ensure that she would have the opportunity to earn more in 2019. RHI told Plaintiff she would be compensated based on her activity in other parts of the business. However, despite repeated requests by Plaintiff for the new compensation plan, RHI never provided one. Thus, Plaintiff was left with a substantially diminished account base and no new form of compensation.

23. Furthermore, Plaintiff was overlooked for promotions. Men in the same or substantially similar positions were promoted despite the fact that Plaintiff's performance was as strong, or stronger, than those men. For example, RHI promoted a man in the same position as Plaintiff to a Metro Market Manager position. Over that same period, Plaintiff's performance was as strong or stronger than the man who was promoted. And, the man promoted had had a sexual relationship with one of his subordinates – a fact known to RHI.

24. RHI's conduct with respect to promotions was not limited to merely overlooking Plaintiff. RHI management actively sought to derail her efforts. In early 2020, RHI posted a new

opening for the position of Vice President, Managed Business Services. This was a natural fit for Plaintiff as she had been working in RHI's managed business services for a substantial portion of her RHI tenure with strong, consistent results. In fact, another RHI executive, the Vice President of Strategic Accounts, reached out to Plaintiff to encourage her to apply for the position.

25. Plaintiff applied and interviewed for the job. Despite positive interviews, Plaintiff was later told by the Executive Director that she would not get the job. He told her it was because her boss (the same male District Manager discussed above) reported that Plaintiff was unable to build relationships and rapport. The Executive Director was quick to add that his experience with Plaintiff had been just the opposite, a sentiment consistent with that expressed by numerous other of Plaintiff's colleague over the years. In fact, Plaintiff had received an award from RHI specifically recognizing Plaintiff for her collaboration with others. After Plaintiff's boss poisoned the well for her, the position was then awarded to her boss' male subordinate.

26. The fact was that the District Manager and others in RHI management had been made aware of Plaintiff's complaints about the harassing and discriminatory conduct alleged above. RHI retaliated against Plaintiff by steadily eroding her account base and thus her compensation and by derailing her chance to secure the Vice President of Managed Business Services role. Adding insult to injury, after thwarting that opportunity, the same man then demoted Plaintiff. A clearer attempt to force Plaintiff out of the company is difficult to imagine.

27. At her wit's end, Plaintiff took her complaints directly to RHI's legal team. Finally, RHI said it would investigate. What transpired, however, was no real investigation at all. Although Plaintiff had already complained more than once and had now provided RHI legal with a lengthy written summary of the issues, RHI said it wanted to speak with her before investigating. Plaintiff cooperated. RHI assigned a human resources staffer to interview Plaintiff. In the midst of the interview, the "investigator" said he had to cut their time short and left the meeting. Plaintiff

heard nothing further that week. She heard nothing the following week. The following week: more of the same, not a word.

28. Only after having to contact the legal team directly again, did RHI act. The investigator set up a second meeting with Plaintiff – the investigator still had yet to do anything to actually investigate. During this meeting, the investigator took an accusatory tone with Plaintiff. For example, when she explained the instances of discrimination, the investigator would say things such as, "well, you really can't say that's definitely because of gender." After an hour or so of this type of interrogation, Plaintiff asked the investigator to provide her with his summary of his interview with her so she could ensure its accuracy. He refused. When his refusal was brought to the attention of RHI legal, it did nothing.

29. Following this interview, Plaintiff again heard nothing for weeks on end. Throughout the "investigation", Plaintiff continued to experience the retaliation alleged above. For example, male managers singled her out on routine team calls, grilling her about her recent outreach to clients to develop business. This treatment was so over the top and painfully obvious to others, that more than one colleague came to Plaintiff afterward to tell her they thought it was out of line and clearly directed at her.

30. Finally, RHI advised that it had sent Plaintiff "a letter" in the mail. Given that the country was in the midst of a pandemic affecting mail delivery time (and, of course, the fact that it is 2020 and RHI regularly communicates with employees by email), RHI was requested to simply email the letter to Plaintiff. It refused, advising that the letter had been sent out the previous weekend and questioning whether Plaintiff had really not yet received it. The letter finally showed up on Friday, with a post-mark of Wednesday, not the previous weekend, raising the question of whether the letter itself was in fact back dated.

7
PLAINTIFF'S SECOND AMENDED COMPLAINT

31. The letter itself provided next to no information. The matter had purportedly been "under investigation" now for months. The letter stated that RHI did not find any evidence of discrimination. The letter did not identify who else the investigator interviewed or even whether in fact he talked to anyone else. The letter did not identify any documents the investigator reviewed or even whether he in fact reviewed any documents. Obviously, compensation records would demonstrate the differences in pay between men and women that Plaintiff had complained about. Yet, the letter makes no mention of any such records.

32. Further, the letter was riddled with inaccuracies. For example, the letter stated that Plaintiff had never made a "prior protected complaint." That is just patently false. She had complained about verbal abuse of female employees by men. She had complained about underpayment in compensation as compared to male employees. She had complained about being promised a compensation plan but never provided one. And, of course, she had provided a detailed written summary of almost every issue alleged hereinabove.

33. RHI was requested to provide the investigator's report to Plaintiff. True to form, RHI refused.

34. Plaintiff was experiencing extreme stress from having endured the above referenced discrimination and retaliation and the fact that RHI refused to take any meaningful action. She sought treatment from a health care provider who directed that Plaintiff should take a leave of absence. Plaintiff followed the advice and took a leave of absence.

35. Plaintiff then applied for short term disability benefits pursuant to RHI policy and its plan. Incredibly, her application was denied. The denial notice was riddled with factual inaccuracies. It also stated that her health care provider was unable to provide additional documentation. That too was false. In fact, her health care provider provided 8 pages of information regarding Plaintiff on the very form RHI's plan required.

36. Plaintiff and later her attorney confronted the benefits provider about this absurd result. Again, to no avail.

37. Next, the RHI administrator then told Plaintiff that because her disability benefits had been denied she had to return to work. Plaintiff had already notified RHI's administrator that her leave had been extended by her health care provider. In addition, Plaintiff had notified her manager directly that her leave had been extended by the health care provider. Nonetheless, RHI characterized Plaintiff as being a "no show."

38. Faced with simply enduring more of the intolerable discriminatory work environment that RHI created and refused to remedy, RHI got what it wanted: Plaintiff quit. Notably, the Illinois Department of Unemployment Security investigated the matter and concluded that Plaintiff left her employment "because the working conditions were hazardous or unsafe." The Department also found that Plaintiff had "made management aware of the hostile work environment and it was never addressed [and that these] conditions or acts rendered the work unsuitable."

## FIRST CLAIM FOR RELIEF
**(Retaliation in Violation of Equal Pay Act 29 U.S.C. § 206 *et seq.*)**

39. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

40. Plaintiff engaged in protected activity by, inter alia, complaining to RHI management about discriminatory conduct with respect to, among other things, compensation as alleged above.

41. RHI was aware of such protected activity because Plaintiff directly complained to members of RHI management.

42. Because of Plaintiff's protected activity, RHI took adverse employment actions against her, including denying her advancement and commensurate increases in title and pay,

denying her bonus compensation, taking away key accounts and leaving her without a compensation plan.

43. Plaintiff has suffered damages as a result of RHI's discrimination, including the value of said salary, bonus and commission compensation.

44. Plaintiff further suffered emotional distress and humiliation. Further, RHI acted with malice and/or reckless disregard for Plaintiff's rights thus rendering punitive damages appropriate.

45. Plaintiff is also entitled to reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
**(Violation of the Equal Pay Act 29 U.S.C. § 206 *et seq*)**

46. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

47. Plaintiff is a woman.

48. Plaintiff performed equal work in a job requiring equal skill, effort, and responsibility as certain male employees and performed such job under similar working conditions.

49. RHI treated Plaintiff's compensation differently than it treated the compensation of male employees performing the same or substantially similar job duties.

50. RHI did not treat Plaintiff's compensation differently based (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a bona fide factor other than gender.

51. Plaintiff suffered damages as a result of RHI's equal pay violation including the loss of salary, bonus and commission compensation, and is entitled to recover such wages, including interest thereon. Plaintiff is also entitled to recover an amount equal in the form of liquidated damages pursuant to the Equal Pay Act.

52. Plaintiff is also entitled attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF
**(Gender Discrimination in Violation of Title VII (42 U.S.C. § 2000e *et seq.*))**

53. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as though fully set forth herein.

54. Plaintiff is a member of a protected class (female).

55. Plaintiff was qualified for her job and performing it satisfactorily.

56. Plaintiff suffered adverse employment actions, including denial of advancement and commensurate increases in title and pay, denial of bonus compensation, loss of key accounts, being denied a compensation plan, and the constructive termination of Plaintiff's employment. Plaintiff felt, and a reasonable person would feel, that she was forced to quit because of intolerable and discriminatory working conditions. These conditions consisted of a continuous pattern of discriminatory treatment that RHI refused to address.

57. Plaintiff's gender was a motivating factor in RHI's adverse actions against Plaintiff.

58. RHI's conduct was engaged in with malice or reckless disregard for Plaintiff's rights. Accordingly, punitive damages are warranted.

59. As a result of RHI's conduct, Plaintiff has suffered and is entitled to recover damages, including the value of lost back wages and benefits (including salary, bonus and commission) lost future earnings and benefits (including salary, bonus and commission).

60. Plaintiff further suffered emotional distress and humiliation.

61. Further, RHI acted with malice and/or reckless disregard for Plaintiff's rights thus rendering punitive damages appropriate.

62. Plaintiff is also entitled to reasonable attorneys' fees and costs.

63. Plaintiff has exhausted her administrative remedies and received a right-to-sue letter from the EEOC dated October 16, 2020.

## **FOURTH CLAIM FOR RELIEF**

**(Retaliation in Violation of Title VII (42 U.S.C. § 2000e *et seq.*)**

64. Plaintiff re-alleges and incorporates the prior paragraphs of this Complaint as if fully set forth herein.

65. Plaintiff engaged in protected activity by, inter alia, complaining to RHI management about discriminatory conduct by male employees and being denied compensation as further alleged above.

66. RHI was aware of such protected activity because Plaintiff complained directly to RHI management and human resources.

67. Because of Plaintiff's protected activity, RHI took adverse employment actions against her, including denying her advancement and commensurate increases in title and pay, denying her bonus compensation, taking away key accounts, leaving her without a compensation plan, and the constructive termination of Plaintiff's employment. Plaintiff felt, and a reasonable person would feel, that she was forced to quit because of intolerable and discriminatory working conditions. These conditions consisted of a continuous pattern of discriminatory treatment that RHI refused to address.

68. As a result of RHI's conduct, Plaintiff has suffered and is entitled to recover damages, including the value of lost back wages and benefits (including salary, bonus and commission) lost future earnings and benefits (including salary, bonus and commission).

69. Plaintiff further suffered emotional distress and humiliation.

70. Further, RHI acted with malice and/or reckless disregard for Plaintiff's rights thus rendering punitive damages appropriate.

71. Plaintiff is also entitled to reasonable attorneys' fees and costs.

72. Plaintiff has exhausted her administrative remedies and received a right-to-sue letter from the EEOC dated October 16, 2020.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for the following relief:

a. Economic damages for past lost wages and benefits and future lost wages and benefits in an amount to be proven at trial;

b. Liquidated damages pursuant to statute;

c. Damages for emotional distress and humiliation in an amount to be proven at trial;

d. Punitive damages in an amount to be proven at trial;

e. Prejudgment interest;

f. Attorneys' fees and costs pursuant to statute; and

g. For such other relief as the Court may deem just and proper.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY.

Executed this 15th day of March 2021.   By:   /s/ Seth R.

SETH A. RAFKIN (199166)
(srafkin@rafkinesq.com)
JENNIFER M. BOGUE (259431)
(jbogue@rafkinesq.com)
**RAFKIN ESQ., PLLC**
1201 SUSSEX TURNPIKE, SUITE 102
RANDOLPH, NJ  07869
Telephone:    (973) 891-3370
Facsimile:    (973) 920-9727

*Attorneys for Plaintiff*

PLAINTIFF'S SECOND AMENDED COMPLAINT