UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELEE WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT HALF INTERNATIONAL INC.,<br><br>　　　　　Defendant. | Case No. 4:20-cv-03989-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 91 |

On November 10, 2021, Defendant Robert Half International Inc. filed a motion for summary judgment.

Having considered the parties' filings and the relevant legal authority, the Court deems the matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b), and GRANTS IN PART AND DENIES IN PART Defendant's motion for summary judgment.

## I.  BACKGROUND

Plaintiff Kelee Williams filed the instant case for gender discrimination against Defendant Robert Half International. She is asserting claims for: (1) retaliation in violation of the Equal Pay Act, (2) violation of the Equal Pay Act, (3) gender discrimination in violation of Title VII, and (4) retaliation in violation of Title VII. (Second Am. Compl., Dkt. No. 71.)

### A.  Factual Background

In January 2013, RHI hired Plaintiff as an account executive. (Def.'s Dep. of Kelee Williams ("Def.'s Williams Dep."), Decl. of Ellen Bronchetti ("Bronchetti Decl."), Dkt. No. 91-10 ¶ 2, Ex. A at 29:10-14.) In 2015, RHI promoted Plaintiff to serve as a Branch Manager. (Def.'s Williams Dep. 30:10-12.) As a Branch Manager in the Management Resources division between September 2017 and October 2018, Plaintiff managed four to seven employees out of the Hoffman

Estates Branch. (Decl. of Paul Trudeau ("Trudeau Decl.," Dkt. No. 91-9 ¶¶ 11-12.)  In or around October of 2018, Plaintiff asked for a raise and a promotion into a Vice President position, and RHI ultimately granted the request by creating a new position—Vice President of Managed Business Services ("VP of Managed Business Services"). (Def.'s Williams Dep. 89:11-91:2.)  In this role, Plaintiff would remain on the Total Rewards compensation plan and would be responsible for generating business from approximately ten accounts in a limited geographic region, in the state of Illinois.  (Decl. of George Denlinger ("Denlinger Decl."), Dkt. No. 91-2 ¶ 6.) In or around November of 2018, RHI offered Plaintiff the VP of Managed Business Services role at a base salary of $150,000. (Def.'s Williams Dep. 30:15-31:4; 88:6-89:10; Bronchetti Decl. ¶ 3, Ex. B at RIF000734.)  Plaintiff accepted the offer and began serving in this position in the beginning of 2019.  (Def.'s Williams Dep. 30:15-31:16.)  As RHI's VP of Managed Business Services, Plaintiff's role focused on marketing Protiviti's global consulting capabilities, and it was Protiviti, Inc. that provided consulting services to RHI clients. (Def.'s Williams Dep. 104:22-105:14; Decl. of Tim Hird ("Hired Decl."), Dkt. No. 91-8 ¶¶ 6-8.)

In early 2020, RHI created the position of Regional Vice President of Managed Business Solutions role ("Regional VP of Managed Business Solutions") for the west, central, and northeast regions.  (Def.'s Williams Dep. 267:9-268:10; Hird Decl., ¶ 12.)  Plaintiff applied for the central region position in January 2020. (Def.'s Williams Dep. 267:18-19; Hird Decl. ¶ 12.)  She was not hired. (Hird Decl. ¶¶ 19-20.)  Instead, Thomas Young, a male, was selected for the central region. (Hird Decl. ¶ 20.)  When Plaintiff asked her direct supervisor, Chris Brinkman, why she was not selected, he told her that "it was not [her] job to bring issues to light. It was not [her] job to raise issues." (Pl.'s Williams Dep. 281:17-282:2.)

After Plaintiff was not promoted, her position as VP of Managed Business Services position was eliminated in February 2020 due to purported redundancies with the Regional VP position. (Decl. of George Denlinger ("Denlinger Decl."), Dkt. No. 91-2 ¶¶ 8, 12.)  Since her Branch Manager position had been filled by another employee, RHI offered Plaintiff a Senior Client Service Director position in or around February of 2020 at the same $150,000 base salary compensation. (Denlinger Decl. ¶ 12; Def.'s Williams Dep. 112:4-16.)  Plaintiff acknowledges

2

1    that her base compensation stayed the same, but she claims that her variable compensation and
2    earning potential significantly decreased. (Decl. of Kelee Williams ("Williams Decl.), Dkt. No. 97
3    ¶ 11.)  Whether her compensation was effectively reduced is disputed. (*See* Denlinger Decl. ¶ 12.)
4    Plaintiff contends that this move was a demotion because the Senior Client Service Director
5    position is supervised by a Branch Manager. (*See* Pl.'s Dep. of George Denlinger, Rafkin Decl.,
6    Ex. D 58:8-59:22.)
7        In April 2020, Plaintiff submitted a written complaint alleging that Defendant engaged in
8    discrimination and retaliation. (Def.'s Williams Dep. 223:5-225:16.)  RHI conducted an internal
9    investigation, which concluded in June 2020, and found no evidence of wrongdoing. (Decl. of
10   Greg Mathurin, Dkt. No. 91-3 ¶¶ 7-8.)  On June 16, 2020, Plaintiff filed the instant lawsuit.
11       On or around August 24, 2020, Plaintiff was granted an FMLA leave of absence of
12   approximately four weeks to care for her sick mother. (Def.'s Williams Dep. 39:15-40:3; 305:6-
13   10; 327:17-22.)  During this time, Plaintiff began working with a therapist to address her
14   emotional distress stemming from her experiences working at RHI. (Williams Decl. ¶ 8.)  Plaintiff
15   was diagnosed with anxiety and major depression. (Williams Decl. ¶ 9, Ex. D.)  In the fall of
16   2020, Plaintiff's therapist directed her to take an extended leave of absence from work. (Williams
17   Decl. ¶ 8.)  Plaintiff sought short-term disability benefits through RHI's third-party ERISA plan
18   administrator, Broadspire, but Plaintiff's request was denied on the grounds that Plaintiff did not
19   provide documentation to support her claim. (Denial, Williams Decl., Ex. C; Def.'s Williams Dep.
20   306:20-307:10; 308:24-309:25; Decl. of Lynne Smith Decl., Dkt. No. 91-6 ¶ 7.)  Plaintiff's
21   therapist, however, did provide paperwork on the form required by the third-party plan. (*See*
22   Broadspire Attending Physician Statement, Williams Decl. ¶ 9, Ex. D.)  The paperwork stated that
23   Plaintiff was diagnosed with major depression and anxiety, that she cannot manage in the
24   "negative work environment," and that she experienced panic attacks as a result of that
25   environment. (Broadspire Attending Physician Statement at 4-5.)  Plaintiff's therapist estimated
26   that she would no longer be incapacitated as of October 1, 2021. *Id.* at 9.  On December 2, 2020,
27   defense counsel (Ellen Bronchetti) emailed Plaintiff's counsel (Seth Rafkin) as a professional
28   courtesy to inform him that Plaintiff's FLSA leave expired on November 15, 2020, and, since RHI

had not received a medical provider's note, Plaintiff had been classified as a "no call no show" ever since. (12/2/20 Email, Decl. of Seth Rafkin ("Rafkin Decl."), Dkt. No. 98 ¶ 17, Ex. J.) Rafkin responded that Plaintiff had been communicating with Broadspire as directed and has been responding to her supervisor's texts about her leave. (*Id.;* Text Messages, Williams Decl. ¶ 10, Ex. E.) Plaintiff's undated text conversation, produced by RHI, states that Plaintiff was informed by Broadspire that RHI Benefits was supposed to determine her leave status. (Text Messages at RHI 002562.) Ultimately, Plaintiff's counsel had to intervene, and, after he did so, Plaintiff's leave was extended through February 1, 2021. (Def.'s Williams Dep. 39:15-40:3; 306:11-13; Rafkin Decl. ¶ 22.)

On January 15, 2021, prior to the end of her leave, Plaintiff resigned her employment with RHI. (Def.'s Williams Dep. 306:14-307:10.) Plaintiff testified that she believed that she was constructively terminated due to the hostile work environment, her interactions with RHI and Broadspire during her disability leave, and hearing from others that she was no longer with RHI prior to her resignation. *See id.*

### B.     Procedural Background

On June 16, 2020, Plaintiff filed the instant case alleging violations of the Equal Pay Act and Title VII of the Civil Rights Act. On May 27, 2021, Plaintiff filed her second amended complaint, which added allegations of constructive termination. (Dkt. No. 71.) On November 10, 2021, Defendant filed a motion for summary judgment. (Def.'s Mot., Dkt. No. 91-1.) On November 29, 2021, Plaintiff filed her opposition. (Pl.'s Opp'n, Dkt. No. 96.) On December 6, 2021, Defendant filed a reply. (Def.'s Reply, Dkt. No. 105.)

On December 17, 2021, the Court sustained Defendant's objection regarding Plaintiff's failure to provide the RHI compensation spreadsheet as an exhibit and ordered Plaintiff to file a supplemental declaration and administrative motion to seal. (Dkt. No. 111.)

On December 20, 2021, Plaintiff filed an administrative motion to seal the unredacted RHI Compensation Spreadsheet, and the second supplemental declaration of Seth Rafkin. (Mot. to Seal, Dkt. No. 112; 2d Suppl. Decl. of Seth Rafkin, "2d Rafkin Decl.," Dkt. No. 112-1; Unredacted RHI Compensation Spreadsheet, Dkt. No. 112-4.) The Court granted the motion to

4

1  seal on January 11, 2022. (Dkt. No. 115.)

## II.   LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250.  "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254.  "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted).  The non-moving party must

1  produce "specific evidence, through affidavits or admissible discovery material, to show that the
2  dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or
3  speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of
4  material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics
5  Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III.  DISCUSSION

Defendant moves for summary judgment on all four causes of action.

#### A.  Equal Pay Act

Defendant moves for summary judgment on the Equal Pay Act claims. (Def.'s Mot. at 10.) Plaintiff's first cause of action is for retaliation in violation of the Equal Pay Act, and the second cause of action alleges discrimination in violation of the Equal Pay Act under the Fair Labor Standards Act (FLSA).

##### i.  Equal Pay Act Discrimination claim

The Equal Pay Act was enacted as an amendment to the Fair Labor Standards Act to address the "endemic problem of employment discrimination in private industry." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190, 195 (1974); *see also Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir. 2020). "In an Equal Pay Act case, the plaintiff has the burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999). This does not mean that the jobs need be identical, but, rather, that "the jobs to be compared have a 'common core' of tasks." *Id.* at 1074 (quoting *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985)). "To make this showing, the plaintiff must demonstrate that the jobs being compared—not 'the individuals who hold the jobs'—are 'substantially equal.'" *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1219-20 (9th Cir. 2021) (quoting *Stanley*, 178 F.3d at 1074).

In opposition, Plaintiff contends that the compensation spreadsheet produced by RHI

provides clear examples of the underpayment of women, including Plaintiff. (Pl.'s Opp'n at 10.) When Plaintiff was a branch manager in 2017 and 2018, her salary was $90,000. (Pl.'s Dep. of Kelee Williams ("Pl's Williams Dep."), Rafkin Decl., Ex. K at 30:5-24.)  In comparison, RHI paid a male branch manager in Minnesota a salary of $125,000 during that same time. (Rafkin Decl. ¶ 10; Unredacted RHI Compensation Spreadsheet, Dkt. No. 112-4 at 2.)  During 2015 and 2016, Plaintiff performed the work of a Metro Market Manager and was paid a $90,000 base salary and $183,807 in bonuses.  (Def.'s Williams Dep. 345:2-18; Unredacted RHI Compensation Spreadsheet at 3.)  During that same time, RHI paid a male metro market manager, who also reported to George Denlinger, $130,000 in base salary and $160,000 in bonuses. (Unredacted RHI Compensation Spreadsheet at 2.)  Moreover, Plaintiff argues that Thomas Young, the man who was hired for the Regional Vice President position for the Central Zone was paid substantially more than the two women selected for the other two zones (Beth Brockway and Suzanne Sylvester), as he was paid $185,000, and the women were paid $130,000 and $125,000, respectively. (Pl.'s Opp'n at 2; Unredacted RHI Compensation Spreadsheet at 2; Hird Decl. ¶ 23.)

        The only other evidence Plaintiff cites to in support of her claim that she performed equal work are the sworn statements of RHI and Plaintiff. (Pl.'s Opp'n at 6.)  This is not sufficient, because Plaintiff does not even identify the comparators by name and, instead, merely claims that the duties of the positions are the same without further information or analysis. *See id.* (citing Pl.'s Resp. to 2d Set of Interrogatories, Rafkin Decl., Ex. A.)  Indeed, Plaintiff's citations to RHI employee testimony and the declarations filed in support of Defendant's motion address only the generalities of the positions based on job title. (*See* Pl.'s Opp'n at 7.)  The Ninth Circuit has repeatedly held that job title, classifications, and descriptions are not determinative, but, rather, the actual job performance and content are what must be compared. *Gunther v. Washington Cty.*, 623 F.2d 1303, 1309 (9th Cir. 1979), *aff'd on other grounds*, 452 U.S. 161 (1981); *E.E.O.C. v. Maricopa Cty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984) (citing *Gunther,* 452 U.S. at 1309) ("The jobs need not be identical, but must require similar skills, effort and responsibility performed under similar conditions…."); *see also Duke v. City Coll. of San Francisco,* 445 F. Supp. 3d 216, 229 (N.D. Cal. 2020) (citing *Maricopa Cty. Cmty. Coll. Dist.*, 736 F.2d at 513).  By

7

failing to identify anything about the so-called comparators[1] other than their job title and base wages, Plaintiff has failed to cite to specific admissible evidence to support her claim that positions of the same title are substantially equal.

In fact, Plaintiff's undermines her argument that the job titles are substantially equal by citing to Denlinger's testimony for the proposition that "[t]he difference in the positions is simply that there is more revenue and headcount associated with certain positions." (Pl.'s Opp'n at 7 (citing Pl.'s Dep. of George Delinger ("Pl.'s Delinger Dep."), Rafkin Decl., Ex. D 61:20-65:21, 45:12-49:11.) In so doing, she essentially concedes that the positions are different. Furthermore, Plaintiff's failure to identify the specific comparators makes it impossible to determine whether the positions were the same or whether there were nondiscriminatory reasons for the differences in base pay, such as supervising a larger branch with more employees or the cost of living in a specific geographical location. Unlike Plaintiff, Defendant presented evidence that, while branch managers who oversee the Management Resources Division (like Plaintiff) generally only oversee three to seven employees, "[o]ther Branch Managers who have greater responsibilities over multiple divisions supervise up to fifteen employees." (*See* Trudeau Decl. ¶ 21.) As a result, even considering the evidence in the light most favorable to the nonmoving party, while Plaintiff shows that there was a disparity in wages, she cannot make a prima facie showing that she performed the same common core of tasks. *See Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1219–20 (9th Cir. 2021). To the extent that Plaintiff blames her lack of admissible evidence on Defendant for not fully complying with its discovery obligations, she was responsible for raising those disputes prior to the discovery cut-off. (*See* Pl.'s Opp'n at 10.)

Accordingly, Plaintiff has not established a prima facie case of wage discrimination under the Equal Pay Act, and summary judgment must be granted on the second cause of action.

---

[1] Defendant identifies the comparators by name in its reply based on the scant information provided by Plaintiff, but even knowing the identities is not enough to determine if the jobs were the same. (*See* Def.'s Reply at 5-6.) Indeed, Defendant contends that Derek Walsh (Minnesota Branch Manager) worked in a different branch and market, had more job responsibilities, and managed significantly more employees than Plaintiff did. *Id.* The Court, however, is unable to make this determination because Plaintiff does not cite to any admissible evidence pertaining to their respective positions.

### ii. FLSA Retaliation Claim

Defendant moves for summary judgment on the FLSA retaliation claim on the grounds that Plaintiff cannot establish a prima facie case. (Def.'s Mot. at 13.) While Plaintiff's opposition conflates the FLSA retaliation claim with the Title VII retaliation claim, the two claims are treated similarly under the law, so this is not necessarily fatal. (*See* Pl.'s Opp'n at 12-14.)

The FLSA contains an "anti-retaliation provision" that prohibits employers from retaliating against employees for filing complaints about violations of the Act. *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1151 (9th Cir. 2000); 29 U.S.C. § 215(a)(3). This anti-retaliation provision applies to complaints made to agencies, such as the Department of Labor, and to complaints made to employers. *Id.* at 1151. Retaliation claims under the FLSA are subject to the same burden-shifting analysis as retaliation claims under Title VII. *Franklin v. Sacramento Area Flood Control Agency*, No. CIV 07-1263 WBS GGH, 2009 WL 2399569, at *18 (E.D. Cal. Apr. 29, 2009) (citing Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997). In order to obtain protection, "an employee must actually communicate a complaint to the employer" and "not all amorphous expressions of discontent related to wages and hours constitute" FLSA protected activity. *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999).

Beginning in 2017, Plaintiff complained to RHI on multiple occasions that women were being paid less than men for performing the same work. (*See* Williams Decl. ¶ 4; Pl.'s Williams Dep. 59:18-63:18, 168:16-169:17, 215:8- 216:15.) In fact, the record indicates that her pay was sometimes increased after making these complaints.

Defendant, however, contends that the April 2020 written complaint was Plaintiff's first complaint for the purposes of this retaliation claim. (Def.'s Mot. at 14.) Complaints, however, need not be written, and are frequently oral, so, viewing the facts in the light most favorable to Plaintiff, the Court disagrees. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 12–13 (2011). Here, a jury could find that Plaintiff was not promoted to Regional Vice President in retaliation for her history of complaints. Specifically, Plaintiff declares that Hird told her that Brinkman sunk her candidacy, and, when asked, Brinkman told Plaintiff that "it was not [her] job to raise issues." (*See* Williams Decl. ¶ 3; *see* Pl.'s Williams Dep. 281:17-282:2.) Taken together,

there is a material, factual dispute regarding whether Plaintiff was subjected to retaliation for making complaints under the FLSA and the Equal Pay Act.

Accordingly, summary judgment is denied as to the FLSA retaliation claim.

### B.     Title VII

Plaintiff's third cause of action is for gender discrimination under Title VII of the Civil Rights Act of 1964, and the fourth cause of action is for retaliation under Title VII.

#### i.     Discrimination and Retaliation Claims

Claims of discrimination under Title VII are analyzed using a burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment decision, and (4) she was treated differently than similarly situated persons outside of her protected class.  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802-04; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981).  "The defendant [has] the burden of producing an explanation to rebut the prima facie case—*i.e.,* the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  After the defendant provides a legitimate, non-discriminatory reason for the challenged actions, the burden then shifts back to the plaintiff to raise a genuine factual issue as to whether the employer's stated reason was a "pretext" or cover-up for unlawful discrimination.  *See Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993).  A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer."  *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000).  To survive summary judgment, the

plaintiff needs to "produce very little evidence" and need not "produc[e] any evidence of discrimination beyond … his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Id.* at 1124, 1127 (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) ("[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.")).

### a. Prima Facie Case

It is undisputed that Plaintiff is a member of a protected class and that she was qualified for the Regional Vice President position. It is also undisputed that she complained of discrimination, sexual harassment and retaliation to her supervisors and management on numerous occasions between 2017 and 2019 to no avail. (Pl.'s Williams Dep. 215:8- 216:15, 59:18-63:18, 143:1-18, 168:16-169:17, 165:21-166:7, 172:9-175:14, 182:12-21, 183:20-185:21, 193:8-196:25; 197:10-198:15, 204:14-206:15, 217:6-218:2; Williams Decl. ¶ 4.) Plaintiff also complained of similar discriminatory and harassing behavior directed at another female report. (Pl.'s Williams Dep. 211:23-214:3.) Taking the facts in the light most favorable to Plaintiff, a jury could also find that she was not promoted to Regional Vice President due to her gender, as a male candidate was selected for the position, or in retaliation for her history of complaints, because there is admissible evidence that Plaintiff had experience with Protiviti and was a good collaborator, won numerous awards, and Hird essentially told Plaintiff that Chris Brinkman sabotaged her candidacy. (*See* Pl.'s Williams Dep. 281:17-282:2; *see also* Williams Decl., ¶¶ 2-3, Ex. A.) Moreover, the fact that Plaintiff's interview for the Regional Vice President position was "short" and took place at the airport in Phoenix, Arizona, is highly suspect, and a jury may find that Defendant was not considering Plaintiff for the position. (*See* Williams Decl. ¶ 3.)

A jury could also find that Plaintiff was demoted to Senior Client Services Director due to either gender discrimination or in retaliation for complaining to Brinkman, since her VP position was eliminated one month later. *See, e.g., Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (Retaliatory intent can be inferred when adverse employment decisions are taken within a reasonable time after complaints of discrimination have been made.).

11

These facts are sufficient to establish a prima facie case for discrimination and retaliation under Title VII.

### b. Legitimate Business Reasons

Since Plaintiff has established a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Defendant argues that the legitimate business reason to hire the male candidate for the Regional Vice President position was that he had "better skills and attributes" than Plaintiff. (Def.'s Mot. at 18; *see also* Hird Decl. ¶ 19.) Moreover, Defendant argues that Plaintiff's transfer out of the Vice President of Managed Business Service role was due to redundancies created by the new Regional Vice President role. *Id.*

### c. Plaintiff's burden is satisfied.

Since Defendant has provided legitimate business reasons for the adverse employment actions, Plaintiff must raise a genuine issue of material fact regarding the truth of Defendant's reasons. The burden to survive summary judgment is not high, and Plaintiff's prima facie case satisfies this burden. *See* discussion, *supra,* Part III.B.i.a. Indeed, the evidence presented requires that the Court make credibility decisions regarding witness testimony, which falls within the jury's purview. *See Chuang*, 225 F.3d at 1124 (9th Cir. 2000) (quoting *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996) ("the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.") Thus, Plaintiff has produced sufficient evidence to show that there is a genuine dispute of material fact regarding her Title VII claims.

### ii. Constructive Termination Allegation

In its motion, Defendant anticipated that Plaintiff would argue that her resignation was an adverse employment action. (Def.'s Mot. at 14 n. 2.) In opposition, Plaintiff argues that her resignation was constructive termination due to "years of discrimination, unequal pay, ignored complaints, exclusion, the denial of a promotion, demotion, a sham investigation, and manipulation of a protected leave of absence," which would have compelled a reasonable person to quit. (Pl.'s Opp'n at 24.)

12

> [A] claim for constructive discharge usually results from a series of discriminatory actions on the part of the employer that are in the nature of a continuing violation: A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable.

*Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994)). "In such cases the individual has simply had enough; she can't take it anymore." *Draper,* 147 F.3d at 1110.

In reply, Defendant argues that there was no independent Title VII violation during the applicable limitations period—300 days prior to her March 15, 2021 EEOC complaint or May 29, 2020—which negates any claim of constructive discharge. (Def.'s Reply at 13-14.) Plaintiff, however, argues that the events leading up to and during her disability leave contributed to her constructive discharge. (Pl.'s Opp'n at 25.) The Court notes that Defendant's argument relies on an unpublished case from the U.S. District Court for the District of Hawaii that found no constructive discharge where the plaintiff "had not set foot at his former job, nor had any interactions with his former supervisors, for 3½ years" prior to sending in his resignation letter. *See Chung v. City & Cty. of Honolulu*, No. CV 14-00314 DKW-BMK, 2016 WL 335849, at *4 (D. Haw. Jan. 27, 2016), aff'd, 728 F. App'x 766 (9th Cir. 2018). Thus, *Chung* is factually inapposite.

Here, Plaintiff went out on stress leave, and, while on leave, she had to contend with Broadspire denying her claim despite completing the required paperwork and multiple phone calls with the Broadspire Disability Benefits Specialist, repeated contact from RHI regarding her return, and then RHI claiming that she was a "no call no show" despite her communicating with her direct manager (Paul Trudeau) that Broadspire recently informed her that RHI Benefits was now handling her leave request, and that her therapist had not cleared her to return to work. (11/4/20 Denial, Williams Decl., Ex. C; 12/2/20 Email, Rafkin Decl. ¶ 17, Ex. J; Text Messages, Williams Decl. ¶ 10, Ex. E.) Ultimately, her attorney had to become involved for RHI to extend her leave to February 1, 2021, even though her therapist estimated that she would not be prepared to return until October 1, 2021. (Rafkin Decl. ¶ 22; Broadspire Attending Physician Statement at 9.) On January 15, 2021, prior to the end of her leave, Plaintiff resigned due to the environment being "so

bad," her encounters with Broadspire and RHI while on disability leave, the denial of the short-term disability claim, and then having a consultant reach out to her expressing their sorrow that she was no longer at RHI. (Def.'s Williams Dep. 306:11-307:10.)

Viewing the evidence in the light most favorable to the Plaintiff, a jury could find that the course of conduct resulted in intolerable working conditions, because Plaintiff was given the runaround after going out on stress leave following years of discrimination. Then, after everything else, the final straw was Plaintiff being informed by a consultant two weeks before her scheduled return that she no longer worked at RHI. Thus, a genuine dispute of material fact exists regarding whether Plaintiff's employment was constructively terminated.

### C. Continuing Violations

To the extent that RHI contends that the only "actionable" adverse actions are the promotion denial and demotion, the Court finds that the earlier incidents could be found to be continuing violations because they contributed to the hostile work environment. *See Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101, 1112 (9th Cir. 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("[U]nder the continuing violations doctrine, acts that fall outside the statutory time period may be actionable.").

### D. Punitive Damages

Defendant moves for summary judgment on punitive damages. (Def.'s Mot. at 22.)

#### i. Availability under Title VII

Title VII provides for punitive damages when a defendant engages in a discriminatory practice "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). An employer may be liable for punitive damages where it "discriminate[s] in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). Under this analysis, even in the absence of egregious conduct, "intentional discrimination is enough to establish punitive damages liability." *Passantino v. Johnson & Johnson Consumer Prods., Inc.,* 212 F.3d 493, 515 (9th Cir. 2000).

Defendant argues that Plaintiff is not entitled to punitive damages, because she cannot point to "any malicious or reckless conduct on behalf of RHI because no such conduct occurred."

14

(Def.'s Mot. at 23.)  This is not true, as Plaintiff pointed to Brinkman's conduct and her allegations of sexual harassment, which she complained of, to no avail. *See* discussion, *supra,* Part III.B.i.a.  Indeed, Defendant's arguments are the same ones made with respect to her Title VII claims, which were also rejected. *Id.*  "[I]t is hard to imagine a case where a discrimination claim survives summary judgment but a punitive damages claim does not." *Davis v. Zurich American Ins. Co.*, No. 3:19-CV-04397-WHO, 2021 WL 369538, at *13 (N.D. Cal. Feb. 3, 2021) (finding that "[h]iding the reason or inventing pretextual reasons [for an adverse action] is action in conscious disregard of [plaintiff's] rights."). "Evidence that the decision-maker committed a discriminatory employment decision and then attempted to cover it up using a pretext is sufficient to defeat summary judgment on the punitive damages issue." *Veloz v. Sears, Roebuck & Co.,* No. 16-05982 SVW GJS, 2017 WL 5151313, at *14 (C.D. Cal. May 23, 2017).

### ii. Availability under the FLSA

Defendant argues that punitive damages are not permitted as a matter of law for violations of the Equal Pay Act. (Def.'s Mot. at 23.)  The Ninth Circuit, however, has not definitively found that punitive damages are unavailable. *See Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999).  In *Lambert,* while the Ninth Circuit declined to resolve this legal issue because it was deemed waived, the panel explicitly stated that it found persuasive the Seventh Circuit's decision in *Travis v. Gary Community Mental Health Center, Inc.*, 921 F.2d 108, 112 (7th Cir. 1990), which concluded that punitive damages were available for FLSA violations. *Id.* at 1011.  Courts in this district have also found that punitive damages are available for violations of the FLSA. *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F. Supp. 2d 1053, 1059 (N.D. Cal. 1998). Absent any persuasive legal authority to the contrary,[2] the undersigned finds that punitive damages are available for the FLSA retaliation claim.

Accordingly, Defendant's motion for summary judgment as to Plaintiff's request for punitive damages is denied.

---

[2] The Court is not persuaded by *Forsberg v. Pac. Nw. Bell Tel. Co.,* 623 F. Supp. 117, 126 (D. Or. 1985), which is not only not from this district, but predates *Lambert* by 14 years. (*See* Def.'s Mot. at 23.)

15

### E. Objections

Finally, the Court overrules Plaintiff's objections to Defendant's declarations submitted in support of the reply brief (Dkt. No. 106) as moot, because the undersigned declines to consider evidence and arguments made for the first time in the reply. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (court may decline to consider new issues raised for the first time in the reply brief).

On December 17, 2021, the Court sustained Defendant's objection to the Rafkin declaration insofar as it attested to the contents of the spreadsheet RHI produced addressing pay disparities but failed to attach it as an exhibit. (Dkt. No. 111.) The Court permitted Plaintiff to file a supplemental declaration with the exhibit attached, and Plaintiff did so on December 20, 2021.[3] Defendant's other objections are overruled. (*See* Def.'s Reply at 2 n. 1.)

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Specifically, the motion is only granted as to Plaintiff's wage discrimination claim under the Equal Pay Act. The motion is denied in all other respects.

IT IS SO ORDERED.

Dated: February 8, 2022

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[3] The Court is not considering arguments put forth by Defendant in connection with its response to Plaintiff's motion to seal (Dkt. No. 113), and it will only consider that RHI confirms that the spreadsheet contains confidential materials that is subject to sealing. Thus, the Court need not address Plaintiff's objections (Dkt. No. 114).